United States Courts
Southern District of Texas
F I L E D

JAN 25 2017

David J. Bradley
Clerk of Court

## UNITED STATES DISTRICT COURT
## SOURTHERN DISTRICT OF TEXAS

GAETAN PELLETIER, PRO SE,                    CASE NO: _____

    *Plaintiff*

*v.*

                                                 **COMPLAINT**

VICTORIA AIR CONDITIONING, LTD.
LLOYD BOEDEKER AND                           **JURY TRIAL DEMANDED**
WARREN HEILKE,

    *Defendants.*

---

### INTRODUCTION

### JURISDICTION AND VENUE

    1.   Federal diversity jurisdiction in this Court is proper under 28 U.S.C. section 1332

because  Plaintiff is a citizen of California, a different state than all Defendants named herein

who are all citizens or entity of Texas and the aggregate amount in controversy exceeds $75,000,

exclusive of interest and costs.  This Court has personal jurisdiction over Defendants that are

sued in their individual capacity inclusive of Victoria Air Conditioning, LTD., "VAC" which is a

Texas Limited Partnership with its registered office located at 513 Profit Sr., Victoria County,

Texas 77901.

    2.   Venue is proper in this Court under 28 U.S.C. section 1391(b) because a

substantial part of the events that gave rise to Plaintiff's claims occurred in this judicial district.

## THE PARTIES

### *Plaintiff Gaetan Pelletier*

3.  Plaintiff Gaetan Pelletier is a citizen of California and resides at 1601 Robinhood Road, Vista, CA 92084. Plaintiff owns the improvements know as the TexInn, located at 2127 N. Esplanade, Cuero, Texas 77954.

### *Defendants*

4.  Defendant, Victoria Air Conditioning, LTD ("VAC") is a Texas Limited Partnership with its registered office located at 513 Profit Dr., Victoria, Victoria County, Texas 77901. VAC.

5.  Defendant, Lloyd D. Boedeker, ("Boedeker") is an individual and Texas resident residing at 348 Crestview Dr., Cuero, Texas 77954.

6.  Defendant Warren Heilker, ("Heilker") is an individual and Texas resident with his place of work at 513 Profit Dr., Victoria, Texas.

## FACTS AND BACKGROUND

7.  This suit arises from damages caused by Defendants' negligent and grossly negligent acts and/or omissions, negligence per se, breaches of contract, and/or fraud, concerning work that Defendants performed, or were contracted to perform in the construction of the project at 2127 N Esplanade, Cuero, Texas 77954.  The original project is for a 172 room hotel and restaurant with all the amenities of a first class hotel operation.  Plaintiff is the owner of the construction improvements and the general overseer responsible for contracting with sub-contractors.

-2-

8.   Upon beginning the construction, Plaintiff sought an experienced, commercial plumbing company to perform all of the plumbing needs for the project consistent with the engineered plumbing plans that had been approved by the City of Cuero.  In the course of that search, Plaintiff found and reviewed the representations on VAC's website, including representations like: "Since 1973 Providing Quality Projects;" "Victoria Air conditioning, LTD is a full service, woman owned Mechanical Contractor, offering HVAC, Piping, Plumbing, Medical Gas, Fabrication, BIM and 3D detailing;" "Victoria Air Conditioning, LTD plumbing department is focused on the more complex plumbing projects;" "Sales Range; $25,000,000 to $74,999,999;" "Employees 100 to 250;" "80 years of combined experience….;" etc.  Plaintiff relied on those representations as true statements that were intended to exemplify professionalism and competence and to induce customers to do business with VAC. (Exhibit A.) Based in part on those representations, Plaintiff contacted VAC and arranged to meet at VAC's office.

9.   In October 2013, Plaintiff met with and interviewed VAC, inclusive of Warren Heilker and Scott Bentson concerning terms, expectations and performance for the plumbing work on Plaintiff's project.  At that meeting, VAC agreed to provide Plaintiff with qualified, licensed plumbers at varying hourly rates for regular time and overtime.  VAC also represented to Plaintiff that a Responsible Master Plumber would obtain the necessary permit from the City of Cuero and would oversee and supervise the work on the job per requirements.  Plaintiff was reassured at the meeting and given a level of comfort that Defendants were fully experienced with large complex projects of this kind and Plaintiff assumed that Defendants would know to follow Texas law and code requirements based on their representations.

-3-

10. On or about November 18, 2013, VAC issued a "Bid Letter" to Plaintiff, proposing the rates and terms for VAC's plumbing work for the project which was emailed to Plaintiff's son, Josh Pelletier who also attended the initial meeting and is an employee of Pelletier Management and Consultant. (Exhibit B) Based on VAC's representations and Bid Letter, Plaintiff accepted and hired VAC for the plumbing work on the project.

11. On or about March 27, 2014, Responsible Master Plumber Lloyd D. Boedeker, Texas License No 38837 ("Boedeker"), applied for and received a permit from the City of Cuero's ("City") Building Department on behalf of VAC that would allow VAC to start the plumbing work. (Exhibits C, D). In obtaining the permit, Boedeker and VAC represented to the City, the public, and to Plaintiff, that, "[a]ll provisions of laws and ordinances governing the work will be complied with [sic] whether specified herein or not." (Exhibit D).

12. On or about April 18, 2014, Boedeker stated in an email to Plaintiff that, ". . . We scheduled to start work Monday morning 4/21/14. Mario Ledesma is the assigned licensed Journeyman Plumber. I have full confidence in Mr. Ledesma's plumbing abilities." (Exhibit E). Boedeker knew, or should have known, at the time that Ledesma did not possess the ability or the knowledge to take on the task of this commercial magnitude, and that the job required the active supervision of a Responsible Master Plumber as a matter of law and as a matter of experience.

13  On or about May 20, 2014, approximately one month after VAC began work on the project, VAC requested that Plaintiff agree to provide Ledesma with helpers to assist on the project. *See* Exhibit F. Acting on behalf of VAC as its employee and agent, Ledesma recommended that Plaintiff hire four specific individuals to help him on the job:.Ruben Cortez,

-4-

Rolando Cruz, Victor Garcia, and Edgar Chavez (the "Plumber Apprentices"). Upon information and belief, two of the Plumber Apprentices were friends of Ledesma's from the Brownsville, Texas area and the other two were members of his family. Both VAC and Boedeker knew that Plaintiff had hired the four Apprentice Plumbers per Boedeker's request and that those four Apprentice Plumbers needed to be working and sponsored under a license of VAC's employees. The four helpers are believed to have registered with the Texas State Board of Plumbing Examiners as Plumber Apprentices shortly before starting work on the project. By Texas code, at least one of the plumbers on site had to identify VAC as their "employer" and be registered or supervised under Boedeker's Responsible Master Plumber's license.

14. Plaintiff agreed to hire the Plumber Apprentices recommended by Ledesma, and Ledesma, as VAC's de facto lead plumber on the project, was charged with the duty of recording their time on the project and submitting that time to Plaintiff for payment. In reliance on Ledesma's submissions as agent and employee of VAC, Plaintiff paid the Plumber Apprentices' earnings to Ledesma, and Ledesma purportedly distributed that pay to the Plumber Apprentices. VAC, Heilker and Boedeker had knowledge of the arrangement.

15. On or about June 10, 2014, VAC's CEO, Warren Heilker, emailed Plaintiff stating, "I have removed Lloyd [Boedeker] from the project and will direct Mario to only submit his request [sic] to Meagan and Ferguson. Lloyd will not be onsite this week for any inspections. Lloyd will not have any more hours on the project, so any hours Mario [Ledesma] has in performing administrative task [sic] will not be hours spent installing material." (Exhibit G)

16. In violation of Texas State Board of Plumbing Examiners' Board Rules, Section 3661.1(29), Texas Occupations Code section 1301.002(9) (C) (9-a) and (9-a) (C), and the

-5-

Plumbing Code adopted by the City of Cuero, VAC and Boedeker knowingly and intentionallyallowed VAC to pull Boedeker, the Responsible Master Plumber whose name was on the plumbing permit and who is responsible as a matter of law for plumbing performed under his license, off the project to leave a journeyman plumber, Ledesma, to make unsupervised plumbing decisions on a complex, 172 room, commercial hotel and restaurant job. VAC and Boedeker failed and neglected to advise Plaintiff that a Responsible Master Plumber was required by law to supervise Ledesma and the Plumber Apprentices, or that the job was being performed without a Responsible Master Plumber. Boedeker knew or should have known that his supervision removal from the job was a violation of the Texas law and code if he were not to be replaced.

17. VAC and Boedeker also failed and neglected to inform the City of Cuero that they had removed Boedeker from the job, and failed and neglected to obtain a new plumbing permit for the job under a new Responsible Master Plumber. Instead, VAC and Boedeker, negligently, fraudulently, and in breach of contract with Plaintiff, allowed Ledesma and the Plumber Apprentices to continue working on the plumbing project without a Responsible Master Plumber supervising VAC's work.

18. The Texas State Board of Plumbing Examiners' Board Rules, Section 361.1., defines plumbing licensee levels as follows:

> **(25) Journeyman Plumber**…has completed at least 8,000 hours working under the supervision of a Responsible Master Plumber, who supervises, engages in, or works at the actual installation, alteration, repair, service and renovating of plumbing….
> **(40) Plumber Apprentice**…
> is engaged in learning and assisting in the installation of plumbing…*and works under the supervision of a licensed Responsible Master Plumber* and the direct supervision of a licensed plumber.

**(48) Responsible Master Plumber**...A...Master Plumber who:
   (A) allows the person's Master Plumber's license to be used by only
       one plumbing company for the purpose of offering and performing
       plumbing work under the person's Master Plumber's license;
   (B) *is authorized to obtain permits for plumbing work; assumes*
       *responsibility for plumbing work performed under the person's*
       *license*, and;
   (C) has submitted a certificate of insurance as required by...the
       Plumbing License Law and...the Board Rules.

(Emphasis added.)

   19. The Texas State Board of Plumbing Examiners' Board Rules, Section 365.1.

provides for the scope of work permitted by each class of licensee as follows:

**Sec. 365.1. License, Endorsement and Registration Categories;**
**Description; Scope of Work Permitted.**
In accordance with Section 1301.351, of the Plumbing License Law, *a*
*person may not perform plumbing without holding the proper license,*
*endorsement or registration which relates to the type of plumbing to*
*be performed. The scope of work permitted to an individual who holds*
*a license, endorsement or registration issued by the Board is described*
*in paragraphs (1) - (12) of this section.*
**(1) Responsible Master Plumber** (or "RMP")--A person who is
licensed as a Master Plumber and meets the requirements of a
Responsible Master Plumber under the Plumbing License Law and
Board Rules is authorized to:
       (A) advertise or otherwise offer to perform or provide plumbing
       to the general public;
       (B) enter into contracts or agreements to perform plumbing;
       (C) obtain plumbing permits to perform plumbing work; and
       (D) perform and supervise plumbing.
         ....
**(3) Journeyman Plumber license**--Authorizes the individual to
perform and supervise plumbing:
       (A) *only under the general supervision of a Responsible Master*
       *Plumber*; and
       (B) *only under contracts or agreements to perform plumbing*
       *work secured by a Responsible Master Plumber.*
....
**(12) Plumber's Apprentice Registration**--Authorizes the individual
to assist a person licensed by the Board in the installation of plumbing:

-7-

(A) *only under the direct, on-the-job supervision of a person licensed by the Board;*
(B) *only under the general supervision of a Responsible Master Plumber;* and
(C) *only under contracts or agreements to perform plumbing work secured by a Responsible Master Plumber.*

(Emphasis added.)

20. Section 1301.002 of The Texas Occupations Code likewise defines Texas plumbing licensees as follows:

Sec. 1301.002. DEFINITIONS.  In this chapter:

**(4)  "Journeyman plumber"** means a person licensed under this chapter who:
(A)  has met the qualifications for registration as a plumber's apprentice or for licensing as a tradesman plumber-limited license holder;
(B)  has completed at least 8,000 hours working under the supervision of a responsible master plumber;
(C)  *installs, changes, repairs, services, or renovates plumbing or supervises any of those activities under the supervision of a responsible master plumber;*
(D)  has passed the required examination; and
(E)  has fulfilled the other requirements of the board.
....
**(6)  "Plumber's apprentice"** means a person other than a master plumber, journeyman plumber, or tradesman plumber-limited license holder who, as the person's principal occupation, learns about and assists in the installation of plumbing, has fulfilled the requirements of and is registered by the board, and *works under the supervision of a responsible master plumber and the direct supervision of a licensed plumber.*
....
**(9-a)  "Responsible master plumber"** means a person licensed as a master plumber under this chapter who:
(A)  allows the person's master plumber license to be used by one plumbing company for the purpose of offering and performing plumbing work under the person's master plumber license;
(B)  *is authorized to obtain permits for plumbing work;*
(C)  *assumes responsibility for plumbing work performed under the person's license;*

-8-

(D) has submitted a certificate of insurance as required by Section
1301.3576; and
(E) has completed a training program required by Section
1301.3576.

(Emphasis added.)

21. Section 1301.351 of The Texas Occupations Code further provides:

**Sec. 1301.351. LICENSE, ENDORSEMENT, OR REGISTRATION
REQUIRED.** (a) *A person, other than a responsible master plumber, may not
engage in plumbing unless*:
(1) the person holds the proper license, registration, or endorsement required
by this chapter; and
(2) *the person's work is supervised and controlled by a person licensed under
this chapter.*
(a-1) *A person may not act as a responsible master plumber unless the person
holds the appropriate license and meets the requirements for a responsible
master plumber under this chapter.*
(a-2) *A person that advertises or otherwise offers to perform or provide
plumbing must secure the services of a responsible master plumber.*

(Emphasis added.)

22. Under the Board Rules and the Texas Occupations Code, a Journeyman Plumber's

license authorizes the person to perform and supervise plumbing only under the supervision of a

Responsible Master Plumber. A Plumber's Apprentice Registration allows the person to assist a

licensed plumber only under the direct, on-the-job supervision of a licensed plumber and only

under the general supervision of a Responsible Master Plumber.

23. Plaintiff reasonably relied on Defendants' misrepresentations that a Responsible

Master Plumber would be in charge of supervising the job that all work would be performed in

compliance with all applicable laws and ordinances, and that Ledesma was qualified and capable

of competently handling the necessary plumbing work. Those representations were material and

untrue. VAC, Boedeker and Heilker breached the contract with Plaintiff and were each negligent

-9-

and negligent per se in failing to maintain a Responsible Master Plumber supervising the project as required by law, and by the fact that VAC Journeyman Plumber Ledesma was not legally authorized, qualified, or competent to perform the work for which Plaintiff had contracted and for which VAC misrepresented that he was capable of performing.

24. VAC, Boedeker and Heilker's negligent failure to maintain a Responsible Master Plumber supervising the work on the project is a violation of the Texas Occupations Code and Texas State Board of Plumbing Examiners Board Rules, is a breach of contract, is negligence per se, grossly negligent, and resulted in extensive property damages.

25. In or about December 2014, approximately six months after Boedeker left the job, Plaintiff was advised by other contractors working at the site that they suspected and caught Ledesma of stealing tools.

26. Also in or about December 2014, Plaintiff suspected that Ledesma was submitting inaccurate time records for the Plumber Apprentices' time spent on the job. Upon investigation, Plaintiff was informed by one of the Plumber Apprentices, that they discovered that Ledesma, acting as employee and agent of VAC and as VAC's supervisor and lead plumber on the project, had been keeping two separate sets of time record books for the Plumber Apprentices and was billing Plaintiff for time that the Plumber Apprentices were not actually working. Evidence also showed that Ledesma, VAC's employee and agent, was also billing Plaintiff at hourly rates over and above what he was actually paying out to the Plumber Apprentices.

27. The Plumber Apprentice who reported the fraud to Plaintiff provided copies of Ledesma's fraudulent time records for November 25, 2014 through December 3, 2014 showing, for example, that Rolando Cruz had worked and received pay from Ledesma for 49.5 hours

-10-

while Ledesma reported 52 hours to Plaintiff; Ruben Cortez had worked and received pay for

31.5 hours while Ledesma reported 52 hours to Plaintiff; Edgar Chavez had worked and been

paid for 17 hours while Ledesma reported 52 hours to Plaintiff; and Victor Garcia worked and

been paid for 49.5 hours while Mario Ledesma reported 52 hours.  Copies of Ledesma's

handwritten, double bookkeeping records are attached as Exhibit H.  As VAC's employee, agent,

and on-site plumbing supervisor on the project, Ledesma's fraudulent overbilling for the

Plumber Apprentices' time on the project is imputed to VAC.  This confirmed the dishonesty and

tool thefts suspicions.

28.  At all relevant times, VAC and Boedeker had full knowledge that the Plumber

Apprentices were working only under Ledesma's supervision and without a Responsible Master

Plumber supervising the job as required by law.  VAC and Boedeker were also fully aware that

Ledesma, as VAC's employee and agent, was accounting for the Plumber Apprentices' time on

the project and submitting the bills to Plaintiff for payment, which Ledesma in turn, distributed

to the Plumber Apprentices.

29. After being informed of Ledesma's suspected theft and discovering that Ledesma

was fraudulently billing Plaintiff for the Plumber Apprentices' time, Plaintiff terminated VAC

from the project.

30. Following VAC's termination, Plaintiff also discovered that VAC had not replaced

Boedeker as Responsible Master Plumber on the job; that VAC did not have a Responsible

Master Plumber supervising the job at all; that neither VAC nor Boedeker had notified the City

of Cuero that Boedeker was no longer the Responsible Master Plumber on the job; and that

neither VAC nor Boedeker had coordinated any of the requisite plumbing inspections with the

-11-

City of Cuero.

31. Upon review of plumbing inspections data from the City of Cuero, Plaintiff discovered that only one inspection - a water pressure test for a fire hydrant - had been performed in approximately 12 months that VAC was on the job. *See* Exhibit I. The subject hydrant appeared to have passed that initial pressure inspection, but Plaintiff discovered in the following weeks that VAC had installed it negligently and incorrectly by failing to anchor the hydrant's piping elbow in concrete. The water pressure from the single test had pulled the piping apart at the elbow. As a result, the elbow was leaking underground and the hydrant had to be replaced. This was an example of many that the journeyman plumber was on a project that was over his level of experience and the lack of proper supervision by a master plumber resulted in costly errors.

32. In or about mid February 2015 Plaintiffs hired Tech-Pro Plumbing & Mechanical ("Tech-Pro"), including Responsible Master Plumber Carlos Cortez and his wife Plumber Apprentice Irma Banda Cortez, to complete the project. Tech-Pro obtained a new plumbing permit from the City of Cuero and began work on the project.

33. Promptly upon taking over about Mid-February 2015, Tech-Pro employed an associate Master Plumber, Eddie Garcia ("Garcia"), to help evaluate the work that VAC had done. Garcia and Tech-Pro immediately discovered and began documenting numerous occurrences of problems with VAC's work and resulting damages to Plaintiff's property, including countless plumbing leaks resulting in property damages to other materials and finishes and significant construction delays, numerous plumbing code violations necessitating corrective

-12-

and repair work, and numerous instances of substandard plumbing work including damages to structural members and other systems in the building caused by Defendants' substandard work. *See* Exhibit J.

34. Tech-Pro and Garcia started work on the project in February, 2015, and for the nearly two years, they spent the majority of their time correcting plumbing errors and code violations committed by VAC. *See* Exhibits J, K, L, M. Problems that Tech-Pro discovered with VAC's work included, without limitation:

   a.   leaks caused by improper mixtures of glue and/or improperly applied glue and/or improper surface preparation;

   b.   faultily installed fixtures;

   c.   fixtures installed without code-required traps;

   d.   improper and missing vents;

   e.   numerous improperly sloped drain pipes;

   f.   numerous plumbing code violations;

   g.   a lack of concrete around the fire hydrant elbow on the west side of the building and the resulting underground leak after its initial test;

   h.   water leaks in at least 82 of the rooms, causing property damages to construction materials, flooring, finishes, and substantial construction delays;

   i.   water leaks in the piping in the lobby ceiling;

   j.   water leaks in the common areas;

   k.   water leaks in the laundry and mechanical rooms;

   l.   water leaks in hallways;

-13-

m.  improperly sloped pipes and numerous conditions of backflow in drain piping;

n.  damages to structural members where VAC negligently cut completely though floor joists to install drain piping; and,

o.  numerous, excessive and unnecessary piping joints, fittings, and supports unnecessarily driving up labor and material costs and creating the potential for future leaks.

35. Plaintiff incorporates by reference the affidavits of Responsible Master Plumber Carlos Cortez and Apprentice Plumber Irma Banda, attached as Exhibits J and K, as though repeated verbatim herein.

36.  Plaintiff also incorporates by reference Exhibit L, consisting of a detailed, partial list of correction work that has been performed so far on VAC's substandard plumbing work, and Exhibit M, consisting of photos of pipes and fittings removed due to leaks, improper installation, and work in violation of the Plumbing Code.

37. As of the date of this complaint, plumbing in over 82 of the guest rooms, the public bathrooms, the restaurant, the laundry rooms, and the common areas have had to be disassembled and re-plumbed to fix VAC's negligent errors and omissions, in addition to structural members and finish materials that were damaged by Defendants' negligent performance of their duties.  VAC's plumbing in only two thirds of the four-story building has been repaired, replaced, tested, and passed inspection.  The southern portion of the building and the plumbing below first floor remain untested for leaks with water pressure.

38. Plaintiff has incurred damages in repair and labor costs in excess of $300,000.00 to date for the repair of damages proximately caused by VAC's, Boedeker's negligent work,

exclusive of the cost of replacement material. Further, VAC's negligence, breaches of contract, fraud, bad acts, omissions, and errors made it impossible for the project to complete other stage of construction that follows completion and testing of the plumbing system.

39. Plaintiff submits that VAC's, Heilker's and Boedeker's acts and omissions set the completion of the project back over 24 months, causing extensive damages other than to Defendants' substandard plumbing work, including but not limited to the following: Damages to structural members resulting from Defendants' improper routing of drain pipes;

    a. Damages to finish materials, drywall, and subflooring caused by leaks in the plumbing systems installed by Defendants and damages to structural floor joists by improper routing of drain pipes;

    b. Material waste and labor cost overages resulting from Defendants' improper and unnecessarily excessive use of pipe hangars, fittings, couplings, and pipe joints;

    c. Diminution in value of the project in general as a result of Defendants' problematic and substandard plumbing work and the reasonable certainty of ongoing plumbing leaks and damages to improvements resulting from future failures of plumbing installed by Defendants;

    d. Loss of revenue and profits from two years' delay in completing construction and opening of the hotel and its restaurant as a result of Plaintiffs having to identify and correct all of the negligent and problematic plumbing work of Defendants.

-15-

## UNDISPUTED FACTS

40. A contract was agreed for VAC to provide Plaintiff with professional plumbing service for Plaintiff's job site and VAC provided service until terminated by Plaintiff.

41. Responsible Master Plumber Boedeker was removed from the project by VAC and VAC did not replace him by any other Responsible Master Plumber.

42. During the work at the job site with Boedeker as Responsible Master Plumber, there were no plumbing inspection performed by the City of Cuero, save the outside fire hydrant per city of Cuero verification.

43. Boedeker was the ultimate responsible party for code violations and work quality.

44. Plaintiff's new Responsible Master Plumber and his crew have been working for nearly two years repairing plumbing leaks, code violation which covers but two thirds of the building and remaining third will also require the repair of leaks and code violation.

45. On August 16, 2016, two City of Cuero inspectors verified five pages of plumbing violations, leaks below first floor, code violation and leaks in the South wing of the project along with multiple miscellaneous pipes and joints that had been removed due to leaks, were tested in the presence of city of Cuero's inspectors during their onsite inspection.

46. Structural damages from plumbing installers was observed during the inspection by City of Cuero inspectors on August 16, 2016.

47. Boedeker did not test, call for inspection nor supervised the project post June 12, 2014.

48. Code violations, leaks and structural damage have been repaired in common areas

-16-

and throughout the building in every room of the west and east side, sparing but a few rooms.

49.   Victoria Air Conditioning, LTD. advertises on their web site the following:

"Founded in 1973 . . . sales range: $25,000,000 to $74,999,999, employees: 100 to 250; with an

in-house fabrication facility and service area that includes South and Central Texas, our

organization can satisfy your needs regardless of the project's complexity or location; bring over

80 years of combined experience and commitment to every job VAC undertakes."

50.   On 3-22-14 Victoria Air Conditioning LTD pulled an MEP Permit Application

with the City of Cuero under the name of Lloyd D. Boedeker, Responsible Master Plumber.

## FIRST CAUSE OF ACTION

### Breach of Contract

51.   Plaintiff reasserts and incorporates by reference the foregoing paragraphs as

though repeated fully herein.

52.   Plaintiff had a valid and enforceable contract with VAC for VAC to provide

appropriately licensed and qualified plumbers to construct the plumbing system for the project

pursuant to engineered plumbing plans and in compliance with applicable permits, laws,

ordinances, and codes.

53.   Plaintiff is proper party to sue for breach of that contract since he is owner of the

project.  Plaintiff negotiated the contract and provided paying arrangements to  VAC for the

plumbing work it performed at the jobsite.

54.   VAC materially breached the contract by failing to perform the plumbing work at

-17-

the project as contracted, in a competent manner, and according to applicable laws, ordinances, rules, general industry standards, and VAC's agreement with Plaintiff, including but not limited to: failing to maintain a Responsible Master Plumber supervising the project; using unsupervised, unskilled, and inexperienced personnel on the project; using improper materials and methods in the plumbing work performed on the project; failing to properly join and secure plumbing materials; failing to comply with the applicable building code requirements for traps, piping, and venting in the plumbing system on the project; providing overall substandard quality plumbing, and by failing to comply with the law, the building permit, the plumbing code, and testing requirements.

55. VAC also materially breached its contract with Plaintiff by VAC's supervising plumber employee and agent, Mario Ledesma, acting in his scope and capacity as supervising plumber on the job, fraudulently over-billing Plaintiff for the Plumber Apprentices' time and rates on the project.

56. VAC's breaches of contract caused Plaintiff damages including but not limited to all labor and material costs incurred in the extensive repair and/or replacement of VAC's improper and defective plumbing, costs associated with the construction delays caused by VAC's improper and defective plumbing work, and lost revenues resulting from the delays in completion and opening of the project, all of which are ongoing and all of which directly result from VAC's improper and defective plumbing work.

57. Plaintiff seeks recovery of all attorney's fees and costs associated with VAC's breaches of contract.

-18-

## SECOND CAUSE OF ACTION

### Negligence

VAC, Heilker and Boedeker)

58. Plaintiff reasserts and incorporates by reference the foregoing paragraphs as though repeated fully herein.

59. Defendants VAC, Heilker and Boedeker each owed Plaintiff a duty of care to perform the plumbing work at project as a reasonably prudent plumber or Responsible Master Plumber in the same or similar circumstances. VAC, Heilker and Boedeker breached that duty by failing to perform their duties as a reasonably prudent plumber or Responsible Master Plumber in the same or similar circumstances would have done.

60. For example, and without limitation, VAC, Heilker and Boedeker breached their respective duties to Plaintiff by:

(A) failing and neglecting to maintain a Responsible Master Plumber supervising the project as required by law and the Board Rules;

(B) turning the management of the plumbing job over to Ledesma, a journeyman plumber who:

   i.   was prohibited by law from working without a Responsible Master Plumber supervising the job;

   ii.  was not experienced or competent to perform the work required;

   iii. was incapable of, and disallowed by law from solely supervising the Plumber Apprentices who were assigned to his charge; and,

   iv.  used his lack of supervision by VAC, Heilker and Boedeker to defraud

-19-

     v.  Plaintiff by submitting fraudulent Plumber Apprentice time records to

    vi.   Plaintiff for payment and steal the difference in pay from both Plaintiff

         and the Plumber Apprentices.

61. VAC, Heilker and Boedeker were further negligent in failing to the supervise the plumbing work at the project, particularly given the fact they were required by law and by the plumbing permit to supervise Ledesma and the Plumber Apprentices working under him. VAC's, Heilker's and Boedeker's negligent supervision of the plumbing work and the personnel working under Boedeker's license was a proximate cause of Plaintiffs' damages.

62. VAC, Heilker and Boedeker were also negligent in failing to provide alternate, qualified and competent personnel to perform the plumbing work.  VAC, Heilker and Boedeker each had a duty to inform Plaintiff that the job could not proceed without a Responsible Master Plumber.  However, after Boedeker left the job neither VAC, Heilker  nor Boedeker informed Plaintiff or the City of Cuero that there was no Responsible Master Plumber supervising the work as required, and VAC, Heilker nor Boedeker undertook to replace Boedeker with another Responsible Master Plumber to supervise the plumbing work.  Such acts were in breach of VAC's and Boedeker's duties to Plaintiff, and that breach of duty was a proximate cause of Plaintif's damages.

63. VAC, Heilker  and Boedeker were also negligent in allowing the work on the job to proceed at all once Boedeker vacated as Responsible Master Plumber.  Texas law requires that a Responsible Master Plumber supervise the plumbing work, and prohibits any plumbing work from being performed on the job without a Responsible Master Plumber's supervision.

Boedeker, Heilker and VAC negligently allowed the plumbing work to proceed under

Boedeker's license and permit and only under the supervision of Ledesma, who was unqualified

and incompetent to perform the work. Such negligence was a proximate cause of Plaintiff's

damages.

64. In every contract there is a common law duty to perform it with care, skill,

reasonable expedience, and faithfulness.[1] VAC, Heilker and Boedeker failed to act with the

required standard of care and in fact fell far below the applicable standard of care. VAC Heilker

and Boedeker were negligent by omission and/or affirmative negligent conduct in the

performance of their obligations and duties, both at law and under VAC's contractual agreement

with Plaintiff. VAC's, Heilker's and Boedeker's breaches of duty proximately caused Plaintiff

extensive and costly damages and set the completion of the hotel back approximately two years.

**THIRD CAUSE OF ACTION**

**Negligence Per Se**

(VAC, Heilker and Boedeker)

65. Plaintiff reasserts and incorporates by reference the foregoing paragraphs as

though repeated fully herein.

66. VAC's Heilker's and Boedeker's acts and omissions as described herein also

constitute negligence per se, as VAC and Boedeker violated Texas Occupations Code section

1301.351, section 1301.002, and Texas State Board of Plumbing Examiners' Board Rules,

section 361.1 and section 365.1 as a matter of law.

-21-

---

[1] *E.g., Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Montgomery Ward v. Scharrenbeck*, 204 S.W.2d 508, 510 Tex. 1947). A party is under a duty to act with reasonable skill and diligence in performing a contract so as not to injure a person or property by its performance. *Id.*

67. Plaintiff is a member of a class of persons that the statute and rules were intended to protect, and Plaintiff's injury is of the type that the statute was intended to prevent; the statute and rules are ones for which tort liability may be imposed; VAC, Heilker and Boedeker each violated the statute without excuse; and, VAC's acts and/or omissions proximately caused Plaintiff damages.

## **FOURTH CAUSE OF ACTION**

### **Gross Negligence**

(VAC Heilker and Boedeker)

68. Plaintiff reasserts and incorporates by reference the foregoing paragraphs as though repeated fully herein.

69. Defendants' negligent acts and/or omissions, when viewed objectively from the Defendants' standpoint at the time they occurred, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others.

70. Defendants had actual, subjective awareness of the risk but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

71. Defendants' negligent acts of removing/abandoning Boedeker, the statutorily-required Responsible Master Plumber who obtained the plumbing permit and who was supposed to be supervising VAC's work including that of Journeyman Plumber Ledesma and the Plumber Apprentices, was in direct violation of the Plumbing Code and Texas law, and constituted a wholly unacceptable and extreme departure from the ordinary standard of care and conduct for professional plumbers in the same or similar circumstances.  VAC's Heilker and Boedeker's knowing, negligent failure to supervise the plumbing work on the project involved an extreme

-22-

degree of risk considering the probability and magnitude of potential harm to others, including damages and delays to the construction of Plaintiff's hotel and the health, safety, and welfare of guests and visitors to the hotel project. VAC Heilker and Boedeker had actual, subjective awareness of those risks but proceeded with conscious indifference to the rights of Plaintiff and others in failing to supervise the subject plumbing work as required by law. Defendants' grossly negligent acts and/or omissions proximately caused Plaintiffs significant damages as addressed herein.

72. Pursuant to Tex. Civ. Prac. & Rem Code ch. 41, Defendants are subject to exemplary damages for their grossly negligent conduct. As a result of Defendants' grossly negligent conduct, Plaintiffs seek punitive damages to be determined at trial.

## FIFTH CAUSE OF ACTION

### A. COMMON LAW FRAUD AND FRAUDULENT INDUCEMENT
(VAC Heilker and Boedeker)

73. Plaintiff reasserts and incorporates by reference the foregoing paragraphs as though repeated fully herein.

74. Defendants VAC Heilker and Boedeker made representations to Plaintiff, directly and indirectly, expressly and by their conduct, regarding Defendants' compliance with applicable Texas laws, rules, regulations, and building codes in performing plumbing work at the project, and Defendants' ability to competently perform plumbing work at project. See, e.g., City of Cuero Plumbing Permit (Ex. D) obtained and signed by Defendant Boedeker individually and as agent of VAC, stating "All provisions of laws and ordinances governing this type of work will be complied [sic] whether specified herein or not. The granting of a permit does not presume to

give authority to violate or cancel the provision of any state or local law regulating construction or the performance of construction," and "IMPORTANT: *M.E.P. contractors responsibility* If you remove yourself from a project, it is the M.E.P.'s responsibility to contact this office to inform us and to have the permit pulled as the contractor of record with supporting documentation of your scope of completed work," and Ex. E, email correspondence from Defendant Boedeker to Plaintiff and VAC in which Boedeker states "Mario Ledesma is the assigned licensed journeyman plumber. I have full confidence in Mr. Ledesma's plumbing abilities."

75. Defendants' representations were material and were false statements of fact or false statements of opinion which Defendants knew to be false, were opinions based on false facts, or were false opinions bolstered by Defendants' special knowledge on which Defendants knew or should have known that Plaintiff was justified in relying. Defendants also made false representations of fact to Plaintiff via their conduct, specifically but without limitation, in removing Defendant Boedeker as Responsible Master Plumber over the project without advising Plaintiff that a Responsible Master Plumber is required by law and without advising the City of Cuero or Plaintiff that the Responsible Master Plumber who had permitted the job and represented that Defendants would comply with all applicable laws and ordinances was no longer supervising Defendants' plumbing work as required by law.

76. When Defendants made the representations to Plaintiff, Defendants knew the representations were false or made the representations recklessly, as positive assertions and without knowledge of their truth.

77. Defendants made the representations with the intent that Plaintiff rely on them, to

-24-

induce Plaintiff into contracting with Defendants for plumbing work at the project, and to induce

Plaintiff into continuing to use Defendants as plumbers on the project after Defendants

knowingly removed the Responsible Master Plumber from the job in violation of the law.

78. Plaintiff justifiably relied on Defendants' misrepresentations that Defendants

would conduct its plumbing work competently and in compliance with all applicable standards,

laws, ordinances, and plumbing codes. Defendants' misrepresentations resulted in and

proximately caused Plaintiff direct and consequential damages, including without limitation,

costs of past and future repair and loss of foreseeable profits.

### B.    FRAUD BY NONDISCLOSURE
(VAC Heilker and Boedeker)

79. Plaintiff reasserts and incorporates by reference the foregoing paragraphs as

though repeated fully herein.

80. Defendants' acts and omissions as described herein also constitute fraud by

nondisclosure. Defendants concealed or failed to disclose to Plaintiff that the law required a

Responsible Master Plumbers' supervision of the plumbing work at the project, despite

Defendants knowingly removing Defendant Boedeker from the job and failing to replace him

with a new Responsible Master Plumber. Instead, Defendants represented to Plaintiff that

Defendants had complete confidence in Defendants' employee and agent, journeyman plumber

Mario Ledesma, supervising the project.

81. Defendants had a duty to inform Plaintiff and the City of Cuero that they were

proceeding to perform plumbing at project illegally without a Responsible Master Plumber

supervising the work. Defendants were charged with knowledge of the law by the issuance of

their licenses by the Texas State Board of Plumbing Examiners, and Defendants knew that

Plaintiff were either ignorant of the facts or did not have an equal opportunity to discover the facts. Defendants were deliberately silent when they had a duty to speak. By failing to disclose the facts, Defendants intended to induce Plaintiff to continue allowing Defendants to illegally perform plumbing work at project without a Responsible Master Plumber supervising the work. Plaintiff relied on Defendants' nondisclosure and Plaintiff suffered injury as a result of acting without knowledge of the undisclosed facts.

## ATTORNEY'S FEES

Plaintiff is entitled to recover reasonable and necessary attorney's fees and cost from Defendants under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of contract, and/or in equity. Plaintiff has retained counsel for a portion of this litigation. Plaintiff presented their claim to Defendants and Defendants did not tender the amount owed within 30 days after the claim was presented.

## JURY DEMAND

82. Plaintiff demands a jury trial.

## CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## PRAYER

For the reasons above, Plaintiff request that the Court issue summons for the Defendants to appear and answer, and that Plaintiffs be awarded judgment against Defendants for the

-26-

following:

    A.  Actual damages in an amount not to exceed $1 million;

    B.  Consequential damages as may be proven at trial, presently estimated to be in excess of $2 million;

    C.  Exemplary damages in an amount as may be determined by the jury;

    D.  Prejudgment and post judgment interest at the highest rate allowed by law;

    E.  Court costs;

    F.  Attorneys' fees; and,

    G.  All other relief to which Plaintiffs are entitled.

Respectfully Submitted,

Gaetan Pelletier, pro se
760.598.5105
1601 Robinhood Road
Vista, CA 92084
Gaetan2000@aol.com

**VERIFICATION**

Under penalty of perjury, I Gaetan Pelletier, who prepared this document pro se, and I declare I have read the foregoing and the facts alleged therein are true to the best of my knowledge and belief.

Gaetan Pelletier

Sate of California
County of San Diego

The foregoing document was acknowledged before me by Gaetan Pelletier who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his personal capacity.

ASHLY S. BYRNE
Commission # 2058915
Notary Public - California
Riverside County
My Comm. Expires Feb 23, 2018

Notary Public *Ashly Byrne*
My Commission Expires: *Feb. 23, 2018*
*Comm. No. 2058915*

**VERIFICATION**

Under penalty of perjury, I Gaetan Pelletier, who prepared this document pro se, and I declare I have read the foregoing and the facts alleged therein are true to the best of my knowledge and belief.

Gaetan Pelletier

Sate of California
County of San Diego

The foregoing document was acknowledged before me by Gaetan Pelletier who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his personal capacity.

ASHLY S. BYRNE
Commission # 2058915
Notary Public - California
Riverside County
My Comm. Expires Feb 23, 2018

Notary Public _Ashly Byrne_
My Commission Expires: _Feb. 23, 2018_
_Comm. No. 2058915_